## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| HANGZHOU QIANMAI ELECTRONIC COMMERCE CO., LTD. d/b/a YNM,<br><br>     Plaintiff/Counterclaim-Defendant,<br><br>     v.<br><br>BEARABY INC. and SOMNOS, LLC d/b/a BEARABY, LLC,<br><br>     Defendants/Counterclaim-Plaintiffs. | Civil Action No.: 24-958-CFC<br><br>**JURY TRIAL DEMANDED** |

## PLAINTIFF HANGZHOU QIANMAI ELECTRONIC COMMERCE CO., LTD.'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS DEFENDANTS' COUNTERCLAIMS

James Hopenfeld (*Pro Hac Vice*)
Yesul Pae (*Pro Hac Vice*)
SINGER LLP
505 Montgomery Street, Suite 1100
San Francisco, CA 94111
Tel.: (415) 500-6080

Stephen B. Brauerman (#4952)
Ronald P. Golden III (#6254)
BAYARD, P.A.
600 North King Street, Suite 400
Wilmington, DE 19801
Tel.: (302) 655-5000

*Attorneys for Hangzhou Qianmai*
*Electronic Commerce Co., Ltd. d/b/a YNM*

Dated: November 7, 2024

## **<u>TABLE OF CONTENTS</u>**

I.    NATURE AND STAGE OF THE PROCEEDINGS .......................................1

II.   INTRODUCTION AND SUMMARY OF THE ARGUMENT .....................2

III.  THE PERTINENT FACTS ...........................................................................3

     A.    Bearaby's "Deep Pressure Therapy" blanket patents ...........................3

     B.    Conventional knitted yarn blankets......................................................6

     C.    The Bearaby Patent claims...................................................................9

     D.    The '480 Patent's pending *ex parte* reexamination ...........................11

IV.   DISCUSSION..............................................................................................12

     A.    Non-technical, abstract ideas are not patentable subject matter .........12

     B.    The Bearaby Patents claim the abstract idea of using an interlooped blanket for "deep pressure therapy" ....................................................14

     C.    Non-technical design details in the Patents' claim limitations do not transform the abstract idea claimed into a patent-eligible "inventive concept".................................................................................................18

V.    CONCLUSION............................................................................................20

## TABLE OF AUTHORITIES

**CASES**

*Alice Corp. Pty. v. CLS Bank Int'l*,
  573 U.S. 208 (2014) ............................................................... 12, 13, 17

*Chargepoint, Inc. v. SemaConnect, Inc.*,
  920 F.3d 759 (Fed. Cir. 2019) ............................................... 13, 16, 17

*Cleveland Clinic Found. v. True Health Diagnostics LLC*,
  760 F. App'x 1013 (Fed. Cir. 2019) ......................................... 6

*Eagle View Techs., Inc. v. Xactware Sols., Inc.*,
  325 F.R.D. 90 (D.N.J. 2018) .................................................... 6

*In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*,
  681 F.3d 1323 (Fed. Cir. 2012) .............................................. 12

*In re TLI Commc'ns LLC Pat.* Litig.,
  823 F.3d 607 (Fed. Cir. 2016) ................................................ 17

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
  566 U.S. 66, 72 (2012) ............................................................ 12, 13

*Mod Stack LLC v. Aculab, Inc.*,
  2019 WL 3532815 (D. Del. 2019) .......................................... 13

*Standard Havens Prod., Inc. v. Gencor Indus., Inc.*,
  897 F.2d 511, (Fed. Cir. 1990) ................................................ 6

*TJTM Techs., LLC v. Google LLC*,
  No. 24-cv-01232-TLT (N.D. Cal. Oct. 22, 2024) .................... 16

*Yu v. Apple, Inc.*,
  1 F.4th 1040 (Fed. Cir. 2001) (citing *Alice*, 573 U.S. at 217)...................... passim

*Zyrcuits IP LLC v. Acuity Brands, Inc.*,
  No. CV 20-1306-CFC, 2021 WL 3287801 (D. Del. Aug. 2, 2021).............. 12, 14

**STATUTES**

35 U.S.C. § 101 ...............................................................................................12, 20

**RULES**

Fed. R. Civ. P. 12(b)(6)...................................................................................13, 19

Pursuant to Fed. R. Civ. P. 12(b)(6) and L.R. 7, Plaintiff Hangzhou Qianmai Electronic Commerce Co., Ltd. b/d/a YNM ("Plaintiff" or "YNM") hereby moves to dismiss the counterclaims for patent infringement filed by Defendants Bearaby, Inc. and Somnos, LLC d/b/a Bearaby, LLC's (collectively, "Defendants" or "Bearaby") on the grounds that the counterclaim patents are invalid for lack of patentable subject matter under 35 U.S.C. § 101.  A Motion, Proposed Order, and the Declaration of James E. Hopenfeld are submitted with this memorandum.

## I.    NATURE AND STAGE OF THE PROCEEDINGS

In this case, YNM seeks a declaratory judgment that it does not infringe three related patents purportedly owned by Bearaby directed to weighted blankets for "deep pressure therapy."  (D.I. 1.)  The patents are U.S. Patent Nos. 10,835,708 (the "'708 Patent"), 11,260,199 (the "'199 Patent"), and 11, 806,480 (the "'480 Patent") (collectively, the "Bearaby Patents").

Bearaby counterclaimed, alleging patent infringement for two of the patents, the '199 and '480 Patents (D.I. 21), and moved to dismiss the declaratory judgment claim against the remaining '708 Patent for lack of subject matter jurisdiction (D.I. 19 and 20.)  YNM filed its Opposition to the Motion to Dismiss on October 31, 2024.  (D.I. 25.)  This motion follows.

## II.    INTRODUCTION AND SUMMARY OF THE ARGUMENT

1.    The Bearaby Patents asserted against YNM purport to describe and claim weighted blankets for use in "deep pressure therapy."  They are, in reality, marketing documents adorned in the language of patents.

2.    By November 2018, when the applications for the Bearaby Patents originally were filed,[1] blankets made from interlooped—meaning "crocheted" or "knitted" ('480 Patent Col. 4:19)—tubular yarns had become conventional. Bearaby's alleged invention is to use those conventional knitted blankets to accomplish the also conventional and nebulous objective of providing "deep pressure therapy."  That is the epitome of a result-oriented, abstract idea.

3.    None of the limitations of the claims asserted by Bearaby transform this abstract idea into an inventive concept.  The only structural element of the blanket that the Patents allege to differ from conventional blankets is the use of folded textile "inner layers" for the material used inside the tubular yarn.  This design detail does not meaningfully address any technical problem identified in the Patents.  That is not inventive, and it is not transformative.

4.    Bearaby's counterclaims foreclose any argument to the contrary. They allege that YNM's blankets, which lack these folded textile "inner layers,"

---

[1] The '708 Patent was filed on November 16, 2018, the '199 Patent was filed on November 16, 2020, and the '480 Patent was filed on February 7, 2022.

nonetheless infringe the asserted claims.  It necessarily follows that Bearaby reads the claims ***not*** to require folded textile inner layers.  YNM does not agree with Bearaby's implied construction, but the Court need not address any issue of claim construction to resolve the issues here.   Here, on a motion to dismiss, the Court must take Bearaby's claims at face value.  If so, on the face of the counterclaims, the asserted claims lack any limitation that could even potentially transform the claimed abstract idea into an inventive concept.

## III.    THE PERTINENT FACTS

### A.    <u>Bearaby's "Deep Pressure Therapy" blanket patents</u>

There are three patents-in-suit.  All three are titled "Layered Yarn and Weighted Blanket for Deep Pressure Therapy."  All three share similar patent specifications and claims.   All three derive from the same original patent application filed November 16, 2018, and name the same inventor.

According to the Bearaby Patents, weighted blankets can be used to provide "deep pressure therapy" to relieve insomnia, anxiety, and other sensory disorders. (Hopenfeld Decl. ¶ 2 ('480 Patent Col. 1:17-22).)[2]  The Patents claim that the pressure applied by weighted blankets stimulate a "feeling of safety" that can be experienced as being "hugged or swaddled."  (*Id.* at Col. 1:22-26.)

_____

[2] Patent citations here and below are to the '480 Patent as the exemplary patent.

The Patents further explain that traditional weighted blankets, in which the weights of various kinds are added into patches stitched into the blankets, have weights that limit breathability and may shift in the blanket, thereby reducing the ability to provide "deep pressure therapy."  (*Id.* at Col. 1:30-57.)

The Patents' proposed solution to the alleged problem is to use a knitted "layered yarn" blanket to provide "deep pressure therapy."  (*Id.* at Col. 4:11-17.)

Fig. 1 of the Patents, reproduced below, illustrates a blanket made from knitted "layered yarn."



Hopenfeld Decl. ¶ 2, Fig. 1.

It is the structure of the knitted blanket using a thick or tubular yarn, not the inner structure of the yarn, that the Patents explain as solving the problems with conventional weighted blankets.  The Patents claim that the evenly-spaced knitted interloops of yarn create openings that improve breathability, (*id.* at Col. 4:5-10), and distribute weight evenly.  (*Id.* at Col. 4:17-21.)  They also claim that the

corresponding knots formed from the knitted interloops create a "pattern of pressure regions on the individual when the weighted blanket is placed over them." (*Id.* at Col. 4:12-16.)

The Patents further explain that the tubular yarn used to make the blanket is a "layered yarn."  A "layered yarn" is a term apparently coined by the patentee and defined to be a textile yarn comprising an outer tube of textile material, inside of which are "inner layers" of additional folded textile material.  (*Id.* at Col. 2:4-16.)

Figures 3 and 4 of the Patents, reproduced below, show the "layered yarn" in cross-section" and how the inner layers of textiles are arranged in the outer tube of the yarn.



Hopenfeld Decl. ¶ 2, Figs. 3-4.

The primary function of the "inner layers" of folded or coiled textiles is to provide additional weight along the length of the yarn. (*Id.* at Col. 5:57-61.[3])  The structure of the inner layers does not substantially address the main problems with conventional blankets as described in the Patents.  The "inner layers" are, therefore, a design detail.

The Patents do not disclose or illustrate any examples of a "layered yarn" other than those described in Figs. 3-7.  The only disclosed yarns include a textile outer tube surrounding inner layers of coiled or folded textile sheets.  The Patents state that the number of sheets and the arrangements of coils or folds may vary. (*Id.* at Col. 5:32-44.)

**B.    <u>Conventional knitted yarn blankets</u>**

Blankets made from knitted yarns in which the yarn comprises an outer textile tube having fiber material inside the tube were known prior to November 2018, when Bearaby filed the first patent application directed to its weighted

---

[3] The Patents also state that the folded inner layers may be configured to improve air circulation within the tubular yarn.  This apparently provides air flow in addition to that created by the knitted interloops.   (*Id.* at Col. 8:56-Col.9:9.)

blanket for deep pressure therapy.[4]

The Bearaby Patents implicitly acknowledge the existence of such

conventional blankets.  They cite an extensive list of prior art blankets and yarns,

including knitted blankets made from tubular yarns.

---

[4] YNM describes the prior art here for background.  As set forth in more detail below, the Court need not make any factual findings relating to the prior art in order to rule on this motion.   The Court nonetheless may take judicial notice of documents in the public record of the Patents, including their prosecution histories and re-examination history.  *Eagle View Techs., Inc. v. Xactware Sols., Inc.*, 325 F.R.D. 90, 97 (D.N.J. 2018) (taking judicial notice of "information that comes directly from the U.S. Patent Office's [] electronic prosecution histories of [] patent[s] and [r]e-exam [] [s]ince this information is 'not subject to reasonable dispute because it … can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned'"); *Cleveland Clinic Found. v. True Health Diagnostics LLC*, 760 F. App'x 1013, 1018 (Fed. Cir. 2019) ("relevant prosecution histories are public records properly considered at the pleadings stage"); *Standard Havens Prod., Inc. v. Gencor Indus., Inc*., 897 F.2d 511, 514 (Fed. Cir. 1990) (taking judicial notice of an office action on re-examination, as public records may be judicially noticed, and all papers or copies relating to a re-examination proceeding that have been entered of record in the re-examination file are open to inspection by the general public).

One example of such a prior art knitted blanket is shown below.  This blanket is depicted in marketing literature downloaded from the "Wayback Machine" dated June 14, 2018.  (Hopenfeld Decl. ¶ 3.)   It is made from interlooped "Ohhio Braid."[5]   As described in the article, Ohhio Braid is a yarn having a cotton exterior, filled with "hollowfiber."



One Dog Woof Crochet for a Modern Life, "Ohhio Braid Blanket DIY Kit

---

[5] Ohhio Braid is identified in the "References Cited" in the Bearaby Patents: Ohhio, "Gorgeous chunky knits," Nov. 18, 2015, https://www.kickstarter.com/projects/1163965817/ohhio-gorgeous-chunky-knits/description; Ohhio, "How to Arm Knit a Medium Ohhio Throw Using Braid," Nov. 15, 2016, https://www.youtube.com/watch?v=wbXk0-UoziA.  Both of these references are videos.   The article from which the picture of Ohhio Braid is included in this memorandum is not cited in the Bearaby patents.  YNM cites this article for demonstrative purposes only.

Review," June 14, 2016,
https://web.archive.org/web/20180614045019/https://www.1dogwoof.com/ohhio-braid-blanket-diy-kit-review/ (last accessed November 5, 2024).

Other examples of yarns comprising an outer textile tube filled with material are described in the prior art.  (Hopenfeld Decl. ¶ 4 (International Publication WO2018111213)[6].)

As described in more detail below, the only possible structural difference between the claimed "deep pressure therapy" weighted blankets and the conventional blanket shown above is the arrangement of the materials inside the textile outer tube of the yarn.  In the Patents, the material inside the tubular yarn is the "inner layers" of "folded or coiled" textile material described above.

## C.    <u>The Bearaby Patent claims</u>

The claims of all three patents are similar.  All three are directed to using knitted weighted blankets to effect "deep tissue therapy."

Because the counterclaims are limited to the '199 and '480 patents, claim 1 of each of those patents—the broadest claim of each--is reproduced here:

Claim 1 of the '199 Patent

1. A deep pressure therapy blanket comprising a weighted material, the weighted material comprising:

---

[6] This publication is cited prior art from the *ex parte* Re-Examination proceedings, discussed *infra*.

a length of layered yarn arranged to form loops that are interlooped to form the weighted material, wherein the length of layered yarn comprises:

an outer tube extending longitudinally from a first end to a second end, the outer tube defining a conduit extending longitudinally therethrough from the first end to the second end, and the outer tube arranged to form the loops that are interlooped; and

a fiber material arranged within the conduit of the outer tube longitudinally from the first end to the second end,

wherein the length of layered yarn is sufficiently weighted by the outer tube and the fiber material to effectuate deep pressure therapy to a person when the deep pressure therapy blanket lies over a person's body.

Claim 1 of the '480 Patent

1. A blanket weighted to effectuate deep pressure therapy to an individual when the blanket lies over the individual, the blanket formed of a single layer of interlooped yarn, wherein the yarn comprises:

an outer tube extending longitudinally from a first end to a second end, wherein the outer tube is formed of a sheet of fabric and defines a conduit extending longitudinally through the outer tube, wherein the conduit comprises a volume; and

a filling arranged within the conduit of the outer tube, wherein the blanket has a weight between 5 pounds and 45 pounds, inclusive.

As can be seen from a comparison of the claims above, the claims of the '199 and '480 Patents are substantially similar. They differ only in that: 1) they use slightly different language to describe the "inner layers" of the "layered yarn"

described in the patents; and, 2) claim 1 of the '480 Patent limits the weight of the blanket.

### D.    <u>The '480 Patent's pending *ex parte* re-examination</u>

On August 27, 2024, the United States Patent Office instituted an *ex parte* Re-Examination proceeding with respect to the claims of the '480 Patent. (Hopenfeld Decl. ¶ 5 (August 27, 2024 Order for *ex parte* Re-Examination by the United States Patent Office).)  The prior art submitted to the Patent Office in the request for re-examination included an example of a blanket made from a yarn comprising an outer textile tube filled with material such as synthetic microfiber.



(Hopenfeld Decl. ¶ 4 (International Publication WO2018/111213 A1, Fig. 3).)

On October 29, 2024, the Re-Examination Specialist in that Re-Examination issued a non-final rejection of all of the claims of the '480 Patent as invalid over the prior art.  (Hopenfeld Decl. ¶ 6 (October 29, 2024 Non-Final Rejection of the August 27, 2024 Re-Examination by the United States Patent Office ("October 29, 2024 Non-Final Rejection")).)  The Re-Examination

Specialist found that a single prior art reference included every limitation of claim 1, with the exception of the weight limitation.  (October 29, 2024 Non-Final Rejection ¶ 5 (citing International Publication WO2018/111213 A1).)  The Re-Examination Specialist found it would be obvious to alter the dimensions of the blanket to meet that limitation.  (*Id.* ¶ 6.)

## IV.    DISCUSSION

The '199 and '480 Patents are directed to and claim the abstract idea of using a conventional knitted blanket to effectuate "deep tissue therapy."  The Patents teach a single additional limitation requiring a "layered yarn" with an inner structure made of folded textiles, but that is a design detail that does not substantially address any technical problem identified in the Patents.  That limitation—which Bearaby alleges in its counterclaims does not even limit the claims[7]—does not transform the abstract idea claimed into an inventive concept.

### A.    <u>Non-technical, abstract ideas are not patentable subject matter</u>

Section 101 of the Patent Act defines patent-eligible subject matter.  It provides: "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor . . ."  35 U.S.C. § 101.  Laws of nature,

---

[7] Defendants' counterclaims do not allege that YNM's blankets are made with yarn with ***folded textiles*** inside.

12

natural phenomena, and abstract ideas are not patentable subject matter. *Zyrcuits IP LLC v. Acuity Brands, Inc.*, No. CV 20-1306-CFC, 2021 WL 3287801, at *2 (D. Del. Aug. 2, 2021) (citing *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014)).

The Supreme Court has established a two-step framework to determine whether a patent claim is drawn to ineligible subject matter. *Yu v. Apple, Inc.*, 1 F.4th 1040, 1043 (Fed. Cir. 2001) (citing *Alice*, 573 U.S. at 217). A court must first determine whether a claim is direct to a law of nature, natural phenomenon, or abstract idea. *Id.* If so, the court must determine whether the claim nonetheless includes an "'inventive concept' sufficient to 'transform the nature of the claim' into patent-eligible" subject matter." *Id.* (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 72, 78 (2012)).

Where, as here, patent ineligibility is addressed on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must accept as true all factual allegations, made in counterclaims, and must view those alleged facts in the light most favorable to the non-movant. *Zyrcuits*, 2021 WL 3287801 at *2. At the pleading stage, patent claims are given their broadest reasonable construction. *In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*, 681 F.3d 1323, 1343 (Fed. Cir. 2012).

**B.    The Bearaby Patents claim the abstract idea of using an knitted blanket for "deep pressure therapy"**

A claim is directed to an abstract idea if it is "directed to a result or effect that [] is the abstract idea and merely invokes generic processes and machinery rather than a specific means or method that improves the relevant technology." *Yu*, 1 F.4th at 1043 (internal quotations omitted).

To determine whether a patent claim is directed to an "abstract idea" under step one of the *Mayo/Alice* framework, a court must first "ask[] what the patent asserts to be the focus of the claimed advance over the prior art[,] focus[ing] on the language of the asserted claims themselves, considered in light of the specification." *Id*.  Courts must be careful, however, not to oversimplify a claim such that a proposed "abstract idea" is untethered from the claim language.  *Mod Stack LLC v. Aculab, Inc.*, No. CV 18-332-CFC, 2019 WL 3532185, at *3 (D. Del. Aug. 2, 2019).

In conducting the step one analysis, courts have found it useful to understand the problem facing the inventor as well as what the patent describes as the invention as a solution to the problem.  *See Chargepoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 767 (Fed. Cir. 2019).  Claims that are "result" oriented, and that accomplish an abstract principle no matter how implemented, are abstract ideas under step one.  *Id.*, at 769.  Mere technical details about a physical invention in

14

the claims or specification will not save a claim directed to an abstract idea.  *Yu*, 1 F.4th at 1044.

The Bearaby Patents' claims, specification, and especially the problems and solution proposed by them, are all directed to the abstract idea of using a conventional knitted yarn blanket to effect "deep pressure therapy."

The problem/solution analysis is especially instructive.  The only problems identified in the patent specification are directed to blanket characteristics that could interfere with or inhibit "deep pressure therapy."  The Bearaby Patents identify two main problems:  1) ensuring "breathability" to make the blanket more comfortable; and 2) ensuring that anything used to weight the blanket does not shift, so that the blanket can apply pressure evenly to improve therapy.  (Hopenfeld Decl. ¶ 2 ('480 Patent Col. 1:30-57; Col. 4:24-29.)

The Patents' proposed solution as described in the patent specification is to use conventional knitted yarn blankets to effect "deep pressure therapy."  The knitted blankets, by providing regularly spaced interloops using long tubular yarns, are the solution to both the breathability and weight-shifting problems.  Whether or not the "problems" identified in the Bearaby patents can be described as "technical" in any meaningful sense, the claims fail to identify any *technical* solution.  *See Zyrcuits*, 2021 WL 3287801 at *4.

Similarly, knitted blankets for use in "deep pressure therapy" is exactly what each asserted claim describes. The preamble of each claim identifies the blankets to be used for deep pressure, not the structure of the yarn, as the subject matter claimed. The claim limitations directed to the structure of the "layered yarn" are just additional features of the alleged invention.

It is apparent from the public record that the blanket described in the Patent claims and specification is, structurally, entirely conventional. Merely using a conventional blanket to achieve the nebulous concept of "deep pressure therapy" cannot be a technical solution to a technical problem.

That the weighted blanket described in the patent claims is entirely conventional is apparent not only from the prior art cited in the Patents—and also the prior art cited during the re-examination of the '480 Patent claims—it is apparent from the patent specification itself.

Nowhere does the patent specification state or imply that a knitted yarn blanket is new or inventive or anything other than conventional. Nor does the patent specification claim that tubular yarns, whatever materials they may be made of, are new or inventive or anything but conventional.

The claims accordingly attempt to preempt *any* use of a conventional knitted blanket made from conventional tubular yarns to effect "deep pressure therapy." They are result-oriented. They do not at all limit *how* the conventional blankets are

16

used to effect deep pressure therapy, demonstrating their preemptive effect.  *See ChargePoint*, 920 F.3d at 769.

Even if this Court were to find that the claims are directed to the structure of the yarn, and not the blankets—and it should not so find, because inner structure of the yarn is not the "solution" to the principal problems posed in the Patents and because Bearaby's counterclaims do not so allege--the claims would still be directed to an abstract idea:  substituting coiled or folded textile material for other fiber material inside of a tubular yarn.

Courts have consistently found that apparatus claims that in practice are directed to a conventional result achieved by employing conventional structures, even where the conventional structures had not been previously used to achieve the claimed conventional result, are directed to "abstract ideas" for the purposes of step one.  *E.g.*, *Yu*, *supra* (finding that claims for digital camera were directed to abstract idea of using multiple pictures to enhance each other); (Hopenfeld Decl. ¶ 7 (*TJTM Techs., LLC v. Google LLC*, No. 24-cv-01232-TLT (N.D. Cal. Oct. 22, 2024) (finding that claims for mobile device were directed to abstract of idea of suppressing notifications))); *Chargepoint, supra* (finding that claims for vehicle charging device were directed to abstract idea of communicating requests to a remote server and receiving them).

**C.**    **Non-technical design details in the Patents' claim limitations do not transform the abstract idea claimed into a patent-eligible "inventive concept"**

In the second step, a court examines the claims to determine whether they recite any limitations that, individually or in combination, transform an abstract idea into a patent-eligible application.  *In re TLI Commc'ns LLC Pat. Litig*., 823 F.3d 607, 613 (Fed. Cir. 2016).  "Where a claim is directed to an abstract idea, the claim must include 'additional features' to ensure that the claim is more than a drafting effort designed to monopolize the abstract idea."  *ChargePoint,* 920 F.3d at 773 (citing *Alice*, 573 U.S. at 221) (internal quotations omitted).  A claim that merely invokes conventional components to apply a broadly claimed abstract idea fails step two.  *Yu*, 1 F.4th at 1045.

The Bearaby Patents teach, and the Patents claim, a single structural limitation that would allegedly distinguish the claimed blankets from conventional knitted blankets:  the use of folded textiles as the "inner layers" of material inside the textile tube that comprises the "outer tube."

This limitation is a mere design detail.  Nowhere does the written description of the Bearaby Patents attribute any substantial inventive significance to the inner layers of folded textiles.  They are just one of many things that could be used to fill and weight a tubular yarn.  If the inner layers address the "breathability" problem, it is in a way secondary to the solution to use knitted interloops.  And they do not

meaningfully address the distribution of weight problem, especially in view of the fact that conventional yarns included material inside the outer tube of yarn.

Nowhere do the Patents state or explain that conventional yarns suffered from any defect related to the distribution of weight; indeed, the Patents do not identify any problems with conventional yarns at all.  Instead, the Patents address the distribution of weight problem in the context of ***non-knitted*** blankets, such as those with sewn square or rectangular "patches."  (Hopenfeld Decl. ¶ 2 ('480 Patent Col. 1:30-42.)  The "folded inner layers" are, at best, a mythical solution to a non-existent, unspecified problem.

It bears noting, furthermore, in its counterclaims Bearaby appears to read the asserted claims so broadly that they would **not** require inner layers of folded textiles (the sole alleged point of novelty described in the patent specification). Bearaby does not allege that the accused blankets include inner layers of folded textiles.   Instead, paragraphs 45 and 46 of Bearaby's counterclaims allege only that the material is a "fiber material" that is allegedly a "spun fiber."

YNM disagrees that the claims are as broad as Bearaby claims.  For purposes of a motion to dismiss under Fed. R. Civ. P. 12(b)(6), however, this Court can take Bearaby's allegations at face value.  And if, as Bearaby alleges, the claims do not require inner layers of folded textiles then there is ***nothing*** in the claims that

meaningfully limits the abstract idea claimed or could be construed to be an "inventive concept" at all.

## V.    CONCLUSION

For the foregoing reasons, this Court should determine that the asserted claims of Bearaby's '199 and '480 Patents are directed to patent ineligible subject matter and are invalid under 35 U.S.C. § 101.  This Court should, accordingly, dismiss with prejudice all of Bearaby's counterclaims.

Date: November 7, 2024                    BAYARD, P.A.


OF COUNSEL:                               */s/ Stephen B. Brauerman*
James Hopenfeld (*Pro Hac Vice*)          Stephen B. Brauerman (#4952)
jhopenfeld@singerIP.com                   Ronald P. Golden III (#6254)
Yesul Pae (*Pro Hac Vice*)                600 North King Street, Suite 400
ypae@singerIP.com                         Wilmington, DE 19801
SINGER LLP                                Tel.: (302) 655-5000
505 Montgomery Street, Suite 1100         sbrauerman@bayardlaw.com
San Francisco, CA 94111                   rgolden@bayardlaw.com
Tel.: (415) 500-6080


*Attorneys for Plaintiff Hangzhou Qianmai Electronic Commerce Co., Ltd.
d/b/a YNM*

## <u>CERTIFICATION OF COMPLIANCE</u>

I certify that this Memorandum complies with the page and word-count provisions set forth in Local Rule 7.1.3(4).  Total word count is 3617.

I also certify that this Memorandum has been prepared in 14-point Times New Roman typeface and complies with Chief Judge Colm F. Connolly's Standing Order Regarding Briefing in All Cases.

Dated: November 7, 2024              */s/ Stephen B. Brauerman*
                                     Stephen B. Brauerman (#4952)